Roberto J. Kampfner (SBN 179026)
WHITE & CASE LLP
555 South Flower Street, Suite 2700
Los Angeles, CA 90071
Telephone:  (213) 620-7700
Facsimile:   (213) 452-2329
rkampfner@whitecase.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FORRESTSTREAM HOLDINGS LIMITED, a Cyprus company,<br><br>        Plaintiff,<br><br>    v.<br><br>GREGORY SHENKMAN (AKA GRIGORY SHENKMAN), an individual,<br><br>        Defendant. | Case No.  16-1609<br><br>**COMPLAINT FOR BREACH OF CONTRACT, COLLECTION OF LOAN AND EQUITABLE LIEN** |

Forreststream Holdings Limited, a Cyprus business company ("**Plaintiff**"), by and through its counsel WHITE & CASE LLP, alleges as follows:

## SUMMARY

1.      This is an action to enforce a loan agreement that is currently in default.  On or about October 21, 2009, Mr. Gregory Shenkman (the "**Defendant**") entered into a loan agreement (subsequently amended in March 2012) with Edmisano Consultancy Limited ("**Edmisano**"), an affiliate of the Plaintiff.  In March of 2012, Mr. Shenkman entered into a loan agreement with Denware Financial Services GMBH ("**Denware,**" and collectively with Edmisano, the "**Initial Lenders**"), another affiliate of Plaintiff.  Pursuant to these two agreements, the Initial Lenders loaned the Defendant $13,875,000.  The loans matured on January 1, 2014, but the Defendant failed to repay them when due.  On January 1, 2014, the date that the loans matured, the Initial

1   Lenders were owed $11,875,000 in principal by Defendant in addition to accrued but unpaid

2   interest.

3          2.     After the Defendant's default, the Initial Lenders and the Plaintiff[1] entered into

4   negotiations with the Defendant to restructure the loans.  As a result of such negotiations, on

5   April 29, 2014, the Initial Lenders and the Plaintiff entered into a Loan Restructuring Agreement

6   with the Defendant.  Pursuant to the Loan Restructuring Agreement:  (a) the Defendant agreed

7   that the loans made by the Initial Lenders to the Defendant would be assigned to the Plaintiff;

8   (b) the Initial Lenders and the Plaintiff agreed to waive the Defendant's prior default, (c) the

9   Defendant agreed to repay to Plaintiff $6,681,350 in principal along with $1,626,370 in past due

10   interest in respect of the loans previously made by the Initial Lenders to Defendant;[2] (d) the

11   parties agreed that the maturity date of the loans owed by Defendant would be extended to April

12   29, 2016; and (e) the Defendant agreed to pledge all of his direct and indirect interests in a

13   company known as EIS Group, Ltd. ("**EIS Stock**") to Plaintiff by no later than June 11, 2014 as

14   security for the restructured loan.

15          3.     The Defendant failed to pledge his EIS Stock to the Plaintiff as required by the

16   Loan Restructuring Agreement.  Instead, the Defendant has offered to pledge to Plaintiff his

17   interests in a company known as @mosphere, which Defendant contends is the owner of his EIS

18   Stock.  That was simply not the deal agreed to by the parties.  In any event, despite repeated

19   requests by Plaintiff and others, Defendant has failed to provide Plaintiff with any written

20   evidence that @mosphere actually owns any EIS Stock.

21          4.     Defendant's failure to pledge his EIS Stock is a breach of the Loan Restructuring

22   Agreement.  As a result, along with the filing of this Complaint, the Plaintiff intends to file a

23   motion seeking an injunction requiring Defendant to immediately pledge his shares of EIS Stock

24   to Plaintiff.  The Plaintiff also requests declaratory relief that the Defendant has breached the

25   Loan Restructuring Agreement and a judgment against Mr. Shenkman in the amount of all

26

27   [1] Plaintiff succeeded to Edmisano and Denware's rights against the Defendant under the Loan Restructuring Agreement described below.
   [2] The remaining amounts of the loans are being repaid by a third party—Alec Miloslavsky—pursuant to a separate

28   agreement.

1   principal and interest due thereunder.

2   **VENUE AND JURISDICTION**

3       5.    This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C.

4   § 1332(a)(2), because Plaintiff is a resident of Cyprus and Defendant is a resident of California

5   and the amount in controversy exceeds $75,000.  Specifically, Plaintiff seeks to collect from Mr.

6   Shenkman the amount of $8,307,720, plus interest of 10% *per annum* commencing on January 1,

7   2014, pursuant to the Loan Restructuring Agreement.

8       6.    <u>Intradistrict Assignment</u>: Venue is proper in this District pursuant to 28 U.S.C.

9   § 1391(b)(1) because Defendant resides within the State of California, in Marin County.

10   **DEFENDANTS**

11       7.    Defendant is an individual resident of California who, upon information and belief,

12   resides at 28 Meadow Hill Dr., Tiburon, California 94920.

13   **PLAINTIFF**

14       8.    The Plaintiff is a Cyprus business company, registration number HE 315218, with

15   its business address at Thasou 3, Dadlaw House, P.C. 1520, Nicosia, Cyprus.  Plaintiff is the

16   "Lender" under the Loan Restructuring Agreement dated April 29, 2014 between Shenkman, the

17   Initial Lenders, and Plaintiff.

18       9.    The allegations contained in the Complaint are made on information and belief.

19   Plaintiff reserves all rights to amend the Complaint to the extent such information proves to be

20   inaccurate.

21   **FACTUAL BACKGROUND**

22       **A.**    **Initial Loan Agreements**

23       10.    Irsek Den, a principal of Plaintiff, has known Defendant and an individual known

24   as Alec Miloslavsky in a personal capacity for over 20 years.  Prior to this dispute, Defendant,

25   Mr. Miloslavsky and Mr. Den were good friends.  In 2009, Defendant and Mr. Miloslavsky

26   approached Mr. Den and asked him for loans to fund certain of their business ventures.  Mr. Den

27   agreed to explore the possibility of making loans to Defendant, largely based on his personal

28   relationship with the Defendant and Mr. Miloslavsky.

COMPLAINT FOR BREACH OF CONTRACT AND EQUITABLE LIEN

11.     In early 2009, Mr. Den discussed the possibility of extending credit to Defendant with the various managers (the "**Managers**") that oversee Mr. Den's assets.  Mr. Den and the Managers agreed that Edmisano and Denware, two affiliates of Mr. Den, would extend loans to Defendant.

12.     After the first loans were made, Defendant and Mr. Miloslavsky asked Mr. Den for an additional loan.  Mr. Den once again explored the possibility of making such a loan with the Managers.  Mr. Den and his managers agreed that Denware would extend the additional credit to Defendant.

13.     In the aggregate, Edmisano extended loans to the Defendant in principal amount of $4,000,000 and Denware extended loans to Defendant in the principal amount of $9,875,000.

14.     To document the loans to Defendant made by Edmisano, Defendant and Edmisano entered into a Loan Agreement on or about October 21, 2009, which was later supplemented by an Addendum dated as of March 2012 (the "**Edmisano Loan Agreement**").  A true and correct copy of the Edmisano Loan Agreement is attached hereto as **Exhibit A**.  To document the loans to Defendant made by Denware, Defendant and Denware entered into a Loan Agreement in March of 2012 (the "**Denware Loan Agreement**").  A true and correct copy of the Denware Loan Agreement is attached hereto as **Exhibit B**.  The loans made pursuant to the Denware Loan Agreement and the Edmisano Loan Agreement are referred to herein as the "**Initial Loans**."

15.     As of January 1, 2014, the outstanding principal amount of the Initial Loans was $11,875,000.  In addition, the Defendant owed the Initial Lenders $2,719,614 in unpaid interest.

16.     After Defendant failed to repay the Initial Loans when due, the Defendant, the Initial Lenders and the Plaintiff entered into negotiations to restructure the Initial Loans.  The negotiations lasted approximately four months and were conducted at arms' length.

**B.      The Loan Restructuring Agreement**

17.     Ultimately, the parties agreed to restructure the Initial Loans as follows:  (a) the Defendant agreed that the Initial Loans would be assigned to Plaintiff; (b) the Initial Lenders and the Plaintiff would waive the currently existing defaults; (c) the parties would agree to split the Initial Loans into two: (i) the first loan would consist of $5,193,650 in principal amount and

COMPLAINT FOR BREACH OF CONTRACT AND EQUITABLE LIEN

$1,093,244 in interest in respect of the Initial Loans (the "**Transferred Loan**") and would be paid solely by Mr. Miloslavsky; (ii) the second loan (the "**Remaining Loan**") would consist of $6,681,350 in principal amount and $1,626,370 in interest in respect of the Initial Loans and would be paid by Defendant;[3] (d) The Defendant would have until April 29, 2016 to repay the Remaining Loan; and (e) Defendant would pledge to Plaintiff all of the EIS Stock to secure Defendant's obligations to repay the Remaining Loan.

18.     The above terms were memorialized in a Loan Restructuring Agreement (the "**Loan Restructuring Agreement**") dated as of April 29, 2014 by and between the Initial Lenders and the Plaintiff on one hand, and the Defendant on the other, which is attached hereto as **Exhibit C**.

19.     As part of the Loan Restructuring Agreement, the Initial Lenders assigned all of their right, title, and interest in and to the Initial Loans to Plaintiff in exchange for Plaintiff's agreement to administer the Initial Loans.  The Initial Lenders and Plaintiff are all affiliated with Mr. Den.

20.     The negotiations surrounding the Defendant's agreement to pledge the EIS Stock to Plaintiff were particularly difficult.  Originally, Plaintiff demanded that Defendant pledge the EIS Stock contemporaneously with the execution of the Loan Restructuring Agreement pursuant to the terms of a standard pledge agreement.  At or about the closing of the Loan Restructuring Agreement, however, Defendant insisted on more time to review the proposed pledge agreement. As an accommodation to the Defendant, Plaintiff agreed to give the Defendant thirty (30) business days from the execution of the Loan Restructuring Agreement (*i.e.*, June 11, 2014) to execute a pledge agreement and pledge the EIS Stock to Plaintiff.  Section 5 of the Loan Restructuring Agreement sets forth the compromise reached with Defendant and requires the Defendant to pledge the EIS Stock by no later than June 11, 2014.

21.     Plaintiff and the Initial Lenders were prepared to enter into the Loan Restructuring Agreement for two primary reasons.  First, Defendant agreed to unequivocally acknowledge that

---

[3] The loans were split based on Defendant's claim that both he and Mr. Miloslavsky had used the proceeds of the Initial Loans in a joint business venture.

COMPLAINT FOR BREACH OF CONTRACT AND EQUITABLE LIEN

he owed Plaintiff the amounts stated in the Loan Restructuring Agreement.  Second, and most importantly, Defendant agreed to pledge to Plaintiff all of the EIS Stock.  The Initial Lenders and Forreststream would not have executed the Loan Restructuring Agreement absent Defendant's agreement to pledge the EIS Stock to Plaintiff.

### C.    The Defendant Refuses to Pledge the EIS Stock

22.    On May 7, 2014, Plaintiff provided a second draft pledge agreement (the "**Draft Pledge Agreement**") to the Defendant through an intermediary.  The Draft Pledge Agreement was considerably more "borrower friendly" than the original pledge agreement proposed by Plaintiff at the closing of the Loan Restructuring Agreement.

23.    Defendant did not execute the Draft Pledge Agreement.  Further, it soon became clear that Defendant did not intend to pledge the EIS Stock to Plaintiff on any terms, let alone in compliance with Section 5 of the Loan Restructuring Agreement.  Instead, Defendant has attempted to renegotiate the terms of the Loan Restructuring Agreement by offering to pledge his shares in a company named @mosphere, which he claims holds EIS Stock.  The Loan Restructuring Agreement requires that Defendant pledge all of his direct and indirect holdings of EIS Stock to Plaintiff, not his interests in other companies.  To make matters worse, despite repeated requests from the Plaintiff and others, Defendant has refused to provide any written information confirming that @mosphere in fact holds any EIS Stock.  Plaintiff does not believe that the shares of @mosphere stock Defendant has purportedly offered to pledge have any value.

### D.    Plaintiff's Demand Letters

24.    As noted above, Defendant was required by the terms of the Loan Restructuring Agreement to pledge his shares of EIS Stock by June 11, 2014.  Defendant failed to do so.

25.    On September 10, 2014, two directors of Plaintiff sent a letter to Defendant demanding that he immediately execute and deliver the Draft Pledge Agreement.  A true and correct copy of such letter is attached hereto as **Exhibit D**.  The letter was sent via UPS and was delivered to Defendant's notice address set forth in the Loan Restructuring Agreement.  Defendant rejected Plaintiff's written demand.

26.    On November 16, 2015, White & Case LLP, counsel to Plaintiff, sent another

1   demand letter to Defendant.  The letter gave Defendant until November 30, 2015 to pledge his

2   shares of EIS Stock.  The letter was sent via UPS to Defendant's address for notice set forth in the

3   Loan Restructuring Agreement.  A true and correct copy of such letter is attached hereto as

4   **Exhibit E**.  Defendant once again failed to pledge his EIS Stock

5        27.     To this date, Defendant has rejected Plaintiff's demands to pledge his EIS Stock.

6   **FIRST CAUSE OF ACTION**

7   **BREACH OF CONTRACT**

8   **(Loan Restructuring Agreement)**

9        28.     Plaintiff incorporates paragraphs 1 through 27 of this Complaint as though set

10  forth herein in their entirety.

11       29.     The Loan Restructuring Agreement is a written contract between Plaintiff, the

12  Initial Lenders and Defendant.

13       30.     Plaintiff and the Initial Lenders have fully performed all of their obligations under

14  the Loan Restructuring Agreement.

15       31.     As of the date hereof, the Remaining Loan is outstanding and has not been repaid.

16       32.     The Loan Restructuring Agreement provides that the parties, including Defendant,

17  shall "agree, oblige and undertake to sign during 30 (Thirty) business days from the date [t]hereof

18  a pledge agreement (the "Pledge Agreement") as a security for the payment and performance of

19  [Defendant's] obligations under the Loan."  Loan Restructuring Agreement § 5.1.

20       33.     The Loan Restructuring Agreement further provides that "[t]he Parties agree that

21  the security provided by such Pledge Agreement … shall by all means include the security

22  interest (direct and indirect) in all of the   [Defendant's] right, title and interest in, to and under

23  the capital stock of EIS Group ltd …"  Loan Restructuring Agreement § 5.2.

24       34.     Thirty (30) business days from the date of the Loan Restructuring Agreement was

25  June 11, 2014.  Defendant has breached the Loan Restructuring Agreement by refusing to sign

26  any form of pledge agreement by June 11, 2014 and thus failing to pledge his right, title and

27  interest in and to the EIS Stock, as required by the Loan Restructuring Agreement.

28       35.     Pursuant to the Loan Restructuring Agreement, the Initial Lenders and the Plaintiff

1   agreed to waive the default arising from Defendant's failure to repay the Initial Loans on January

2   1, 2014 (the "**Initial Default**"), "on the terms and conditions set forth [in the Loan Restructuring

3   Agreement]." Loan Restructuring Agreement Recital (F).

4       36.    Because Defendant has not fulfilled the terms and conditions set forth in the Loan

5   Restructuring Agreement, Plaintiff's agreement to waive the Initial Defaults is nullified and,

6   therefore, the entire amount owed by Defendant under the terms of the Loan Restructuring

7   Agreement is currently due and payable to Plaintiff.

8       37.    As a result of the foregoing, Plaintiff is entitled to judgment for all principal and

9   accrued interest due on the Remaining Loan in the amounts described in the Loan Restructuring

10   Agreement.

11       38.    Plaintiff is also entitled to specific performance in respect of the Loan

12   Restructuring Agreement pursuant to Cal. Civ. Code § 3384, and in particular Plaintiff's

13   commitment to pledge his shares of EIS Stock.

14       39.    Plaintiff has been forced to expend funds, including legal fees and costs, in order

15   to bring this lawsuit to enforce its rights under the Loan Restructuring Agreement.  Plaintiff is

16   further entitled to recover such legal fees, costs, and other funds as part of its judgment in this

17   matter.

18   <u>**SECOND CAUSE OF ACTION**</u>

19   **EQUITABLE LIEN**

20       40.    Plaintiff incorporates paragraphs 1 through 39 of this Complaint as though set

21   forth herein in their entirety.

22       41.    The Loan Restructuring Agreement is an express agreement in writing whereby

23   the contracting parties manifested their shared intention to make specified personal property,

24   which included shares of capital stock of EIS Group Ltd., security for Defendant's debt and

25   obligations under the Initial Loans and the Loan Restructuring Agreement, which remain

26   outstanding.

27       42.    Defendant has substantially benefitted from the agreement set forth in the Loan

28   Restructuring Agreement and Plaintiff relied, to its detriment, on Defendant's agreement to sign

the Pledge Agreement and secure Defendant's obligations with the specified collateral.

43.     Equity requires that Plaintiff holds an equitable lien on Defendant's direct and indirect shares of capital stock of EIS Group Ltd.

**PRAYER**

WHEREFORE Plaintiff prays that the Court grant as follows:

1.      Specific performance by Defendant of its obligation to pledge as collateral its shares of capital stock of EIS Group Ltd. to secure its obligations in respect of the Initial Loan Agreements and the Loan Restructuring Agreement;

2.      Injunctive relief as necessary to cause Defendant to pledge as collateral its shares of capital stock of EIS Group Ltd. to secure its obligations in respect of the Initial Loan Agreements and the Loan Restructuring Agreement;

3.      Damages in an amount equal to the principal and interest accrued through and after judgment on Defendant's portion of the Initial Loans, on account of Defendant's breach of the Loan Restructuring Agreement;

4.      An equitable lien in Defendant's shares of the capital stock of EIS Group Ltd.;

5.      Plaintiff its attorney's fees associated with this lawsuit;

6.      Plaintiff its costs of suit herein; and

7.      Such other and further relief as the Court may deem just and proper.


DATED:  March 31, 2016                          WHITE & CASE LLP


                                                By: */s/ Roberto J. Kampfner*
                                                    Roberto J. Kampfner
                                                    *Attorneys for Plaintiff*