1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                       NORTHERN DISTRICT OF CALIFORNIA

10                            San Francisco Division

11

12  FORRESTSTREAM HOLDINGS          | Case No. 16-cv-01609-LB
    LIMITED,                        |
13                                  |
              Plaintiff,            | **ORDER GRANTING THE PLAINTIFF'S**
14                                  | **SUMMARY-JUDGMENT MOTION**
        v.                          |
15                                  |
    GREGORY SHENKMAN,               |
16                                  | Re: ECF No. 81
              Defendant.            |
17

18                              **INTRODUCTION**

19        This is a breach-of-contract lawsuit arising from a borrower's breach of a multi-million-dollar

20  loan agreement.[1] Forreststream, the lender, sued Gregory Shenkman, the borrower, for failing to

21  repay the loan and for failing to pledge his interest in a company called EIS Group to secure the

22  loan.[2] The court grants Forreststream's motion for summary judgment.[3]

23

24

25  _____

26  [1] *See generally* First Amended Complaint ("FAC") – ECF No. 13. Record citations refer to material in
    the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top
    of documents.

27  [2] *See generally id.*

28  [3] Motion for Summary Judgment – ECF No. 81.

United States District Court
Northern District of California

**STATEMENT**

**1.  Forreststream's Affiliates Lend Funds to Mr. Shenkman**

In 2009, Mr. Shenkman approached Irsek Den — a friend of twenty years and a Forreststream principal — for a loan.[4] Mr. Den agreed to extend the loan through two of his companies: Edmisano Consultancy Limited and Denware Financial Services GMBH.[5] Mr. Shenkman subsequently requested additional funds, and Mr. Den agreed.[6] The initial loans through Edmisano and Denware, dated between October 2009 and March 2012, totaled "somewhere between $10–12 million" (according to Mr. Shenkman), or $13,875,000 (according to Forreststream).[7]

The initial loans matured on January 1, 2014.[8] On that date, although Mr. Shenkman had "made payments towards the principal balance" when he was able, he still owed $11,875,000 in principal and $2,719,614 in unpaid interest.[9] Mr. Shenkman defaulted, and the parties entered into restructuring negotiations.[10]

**2.  The Parties Negotiate and Agree to a Loan Restructuring Agreement**

The parties, including Alec Miloslavsky (Mr. Shenkman's former business partner),[11] negotiated a restructuring of the initial loans between 2013 and 2014.[12] The parties signed the Loan Restructuring Agreement on April 29, 2014.[13] The key terms are as follows. First, Edmisano and Denware waived Mr. Shenkman's default on the initial loans.[14] Second, Edmisano and

---

[4] Den Decl. – ECF No. 83, ¶ 3; Shenkman Decl. – ECF No. 89-3, ¶¶ 3–4.

[5] Den. Decl. – ECF No. 83, ¶¶ 3–6; Shenkman Decl. ¶ 4.

[6] Den. Decl. – ECF No. 83, ¶ 5; Shenkman Decl. ¶ 4.

[7] Den Decl. – ECF No. 83, ¶ 6; Shenkman Decl. ¶ 4; Mazukabzova Decl. – ECF No. 10, Exs. B & C.

[8] Den Decl. – ECF No. 83, ¶ 7; Shenkman Decl. ¶ 4.

[9] Den Decl. – ECF No. 83, ¶ 7; Shenkman Decl. ¶ 4.

[10] Den Decl. – ECF No. 83, ¶¶ 7–8; Shenkman Decl. ¶ 5.

[11] Shenkman Decl. ¶ 2.

[12] Den Decl. – ECF No. 83, ¶ 8; Shenkman Decl. ¶ 5.

[13] Den Decl. – ECF No. 9, ¶ 17; Loan Restructuring Agreement – ECF No. 82 at 13–16.

[14] Loan Restructuring Agreement, Recitals (E)–(F).

United States District Court
Northern District of California

Denware assigned the loans to Forreststream.[15] Third, the parties bifurcated the total loan balance: (1) Mr. Miloslavsky agreed to pay $5,193,650 in principal and $1,093,244 in interest; and (2) Mr. Shenkman agreed to pay $6,681,350 in principal and $1,626,370 in interest.[16] Fourth, Mr. Shenkman's portion of the debt would accrue 10% interest per year.[17] Fifth, Mr. Shenkman agreed to repay the debt (including interest) within twenty-four months of the parties' agreement, or by April 29, 2016.[18] And sixth, within thirty business days (by June 11, 2014), the parties agreed to sign a pledge agreement "as security for the payment and performance of [Mr. Shenkman's] obligations under the Loan."[19] The pledge agreement was to include "the security interest (direct or indirect) in all of [Mr. Shenkman's] right, title and interest in, to and under the [] capital stock of EIS Group ltd."[20] The relevant excerpt from the contract is as follows:

**5.    Pledge**

5.1    The Parties hereby agree, oblige and undertake to sign during 30 (Thirty) business days from the date hereof a pledge agreement ("Pledge Agreement") as a security for the payment and performance of the Borrower's obligations under the Loan.

5.2    The Parties agree that the security provided by such Pledge Agreement as per clause 5.1 hereof shall by all means include the security interest (direct or indirect) in all of the Borrower's right, title and interest in, to and under the the [sic] capital stock of EIS Group ltd (the "Pledged Shares") and any proceeds and distributions under or pursuant to any agreements with respect to the Pledged Shares and any rights to such distributions, and any certificates and instruments representing the Pledged Shares.[21]

The parties dispute whether Mr. Shenkman personally must pay the loan or whether the sole recourse is against the EIS stock. In their papers, they provide the following context. To facilitate the negotiations, Maksim Sterlyagov and Michael Zaits acted as intermediaries.[22] The negotiations

---

[15] *Id.* § 1.

[16] *Id.,* Recital (E), § 2.

[17] *Id.* § 3.

[18] *Id.* § 4.

[19] *Id.* § 5.1.

[20] *Id.* § 5.2.

[21] *Id.* § 5.

[22] Den Decl. – ECF No. 9, ¶ 13; Shenkman Decl. ¶ 6.

United States District Court
Northern District of California

centered on Mr. Shenkman's pledge of stock in EIS Group, Ltd., as security under the restructured loan.[23] The lenders say that they would not have restructured the loan "absent [Mr. Shenkman's] agreement to pledge the EIS Stock to Forreststream."[24] Mr. Shenkman, although "not eager to pledge" the EIS shares, "was willing to do so on the condition that the restructured loan be recourse as to the shares only."[25] Mr. Shenkman repeatedly told "Mr. Den and/or his associates" that he "would not pledge [his] shares in EIS unless recourse under the restructured loan was limited to those shares."[26] And in April 2014, when Mr. Zaits (one of the intermediaries) presented Mr. Shenkman "with a single page for signature and asked [Mr. Shenkman] to sign as confirmation of [his] agreement to the terms [they] had been discussing," Mr. Shenkman "understood this to mean that Forreststream had agreed to [his] unequivocal condition that pledging [his] EIS shares meant that the restructured loan would be non-recourse."[27]

The contract has no integration clause.

### 3.  Mr. Shenkman Breaches the Agreement & Forreststream Sues

Mr. Shenkman did not pledge his shares of EIS stock.[28] In May 2014, Forreststream sent Mr. Shenkman a draft pledge agreement, but he did not sign it.[29] Mr. Shenkman instead "attempted to renegotiate [the] deal by offering to pledge his shares in a company named @mosphere, which he claimed held EIS stock."[30] Forreststream contacted Mr. Sterlyagov or Mr. Shenkman four times between August 2014 and November 2015 to convince Mr. Shenkman to pledge his shares.[31] On March 31, 2016, Forreststream sued Mr. Shenkman for his failure to pledge the stock under the

---

[23] *See* Den Decl. – ECF No. 9, ¶¶ 15–16; Shenkman Decl. ¶ 7.

[24] Den Decl. – ECF No. 9, ¶ 15.

[25] Shenkman Decl. ¶ 7.

[26] *Id.* ¶ 8.

[27] *Id.* ¶ 9.

[28] Den Decl. – ECF No. 83, ¶ 10.

[29] Den Decl. – ECF No. 9, ¶¶ 18–19; Mazukabzova Decl. – ECF No. 10, ¶ 9, Ex. D.

[30] Den Decl. – ECF No. 9, ¶¶ 19–25.

[31] *Id.*

Restructuring Agreement.[32] The restructured loan's due date was April 29, 2016; Mr. Shenkman did not pay the outstanding balance.[33] Forrestream then amended its complaint to allege Mr. Shenkman's breach of his repayment obligations.[34]

Forrestream initially sought a preliminary injunction to enforce its rights under the Loan Restructuring Agreement.[35] But, after Mr. Shenkman did not respond to or defend the case, Forrestream moved for entry of default, which the clerk of court granted.[36] Forrestream then moved for default judgment.[37] Two days before the hearing on the default-judgment motion, Mr. Shenkman appeared in the case and moved to set aside the entry of default.[38] The court vacated Mr. Shenkman's default after he satisfied certain conditions, including the execution of a stipulated injunction to pledge his interests in EIS and @mosphere "to secure performance of [his] obligations to Forrestream, as determined in this Action."[39] The parties then submitted a stipulated schedule to complete discovery and for Forrestream to file its summary-judgment motion.[40] Forrestream moved for summary judgment.[41] The court held a hearing on March 9, 2017.[42]

## GOVERNING LAW

The court must grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of

---

[32] *See* Compl. – ECF No. 1, ¶¶ 28–39.

[33] Den Decl. – ECF No. 83, ¶ 10.

[34] *See* FAC ¶¶ 35–39.

[35] *See* Motion for Preliminary Injunction – ECF No. 8.

[36] Motion for Entry of Default – ECF No. 21; Entry of Default – ECF No. 26.

[37] Motion for Default Judgment – ECF No. 27.

[38] *See* ECF Nos. 31, 32, 33, 34, 36, 37, 43, 44.

[39] *See* Minute Entry – ECF No. 40; Stipulated Order for Injunctive Relief – ECF No. 41 at 2; Minute Entry – ECF No. 50; Order – ECF No. 51; Letter – ECF No. 52; Order – ECF No. 59; Letter – ECF No. 62.

[40] ECF Nos. 69, 75, 79, 88, 94, 97.

[41] Motion for Summary Judgment – ECF No. 81.

[42] Minute Entry – ECF No. 100.

law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Material facts are those that may affect the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* at 248–49.

The party moving for summary judgment has the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) ("When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'") (quoting *Celotex*, 477 U.S. at 325).

If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence supporting its claims or defenses. *Nissan Fire & Marine*, 210 F.3d at 1103. The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. *See Devereaux*, 263 F.3d at 1076. If the non-moving party does not produce evidence to show a genuine issue of material fact, the moving party is entitled to summary judgment. *See Celotex*, 477 U.S. at 323.

In ruling on a motion for summary judgment, inferences drawn from the underlying facts are viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

United States District Court
Northern District of California

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## ANALYSIS

### 1. Evidentiary Objections

Mr. Shenkman asserts that Forreststream's "key evidence" is inadmissible. He challenges (1) the Loan Restructuring Agreement, (2) Mr. Den's declaration regarding the parties' agreement, and (3) Mr. Den's and Ms. Mazukabzova's statements about the initial outstanding loan balance.[43]

Forreststream argues that Mr. Shenkman should be judicially estopped from presenting, and relying on, communications surrounding the parties' restructuring negotiations.

### 1.1 Mr. Shenkman's Objections to the Loan Restructuring Agreement

Mr. Shenkman first argues that the Loan Restructuring Agreement is inadmissible hearsay and questions the document's authenticity.[44]

The contract is not hearsay. Hearsay is an out-of-court statement introduced to prove the truth of the matter asserted. Fed. R. Evid. 801(c). But "a written statement, which itself 'affects the legal rights of the parties or is a circumstance bearing on conduct affecting their rights,' falls outside the definition of hearsay." *United States v. Bellucci*, 995 F.2d 157, 161 (9th Cir. 1993). A contract — "a legally operative document that defines the rights and liabilities of the parties" — is not hearsay. *See Stuart v. Unum Life Ins. Co. of Am.*, 217 F.3d 1145, 1154 (9th Cir. 2000); *see also Universal City Studios LLC v. Otis Elevator Co.*, No. CV 16-1521-DMG (KSx), 2016 WL 2642209, at *2 (C.D. Cal. May 9, 2016) ("[C]ommercial documents with independent legal significance, such as insurance policies and contracts, are legally-operative 'verbal acts' which do not constitute hearsay.").

Forreststream also properly authenticated the Loan Restructuring Agreement.

"Authentication is a condition precedent to admissibility" and "unauthenticated documents cannot be considered in a motion for summary judgment." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (internal quotations omitted). To authenticate a document, a party "must

---

[43] Opposition – ECF No. 89 at 9–11.

[44] *See id.* at 9–10.

produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). This may be done by the testimony of a witness with knowledge of the item, testifying "that an item is what it is claimed to be." *Id.* 901(b)(1). "A document can be authenticated [under Rule 901(b)(1)] by a witness who wrote it, signed it, used it, or saw others do so." *Orr*, 285 F.3d at 774 n.8 (quoting 31 Wright & Gold, Fed. Prac. & Proc.: Evidence § 7106, 43 (2000)) (alteration in original).

In her declaration, Ms. Mazukabzova authenticates the Agreement, which is attached to the declaration.[45] She declares that she sent by email a final draft of the Agreement to Mr. Sterlygov for Mr. Shenkman to sign.[46] The Agreement she sent to Mr. Sterlygov "was in the same form as the" Loan Restructuring Agreement she attached to her declaration.[47] Later that same day, she states, she "received an email from Mr. Sterlyagov indicating that the Loan Restructuring Agreement had been executed by [Mr. Shenkman]."[48] Ms. Mazukabzova then "obtained a physical copy of the executed Loan Restructuring Agreement" and confirmed that Mr. Shenkman signed it.[49] Forreststream, Edmisano, and Denware signed the Agreement, and Ms. Mazukabzova placed it in Forreststream's books and records — of which she is responsible for maintaining — "exactly in the form attached" to her declaration.[50]

Ms. Mazukabzova's declaration is sufficient to support a finding that the Loan Restructuring Agreement is what Forreststream claims it is. Mr. Shenkman doubts that Ms. Mazukabzova "could ever lay a proper foundation for admission of the" Loan Restructuring Agreement because the document is in English and her native language is Russian.[51] But that argument does not alter Ms. Mazukabzova's ability to identify the Loan Restructuring Agreement. In any event, her English-

---

[45] *See* Mazukabzova Decl. – ECF No. 82, ¶¶ 4–5, Ex. A.

[46] *Id.* ¶ 4.

[47] *Id.*

[48] *Id.* ¶ 5.

[49] *Id.*

[50] *Id.* ¶¶ 2, 5.

[51] *See* Opposition at 9–10.

United States District Court
Northern District of California

language email exchanges with Mr. Shenkman demonstrate her English proficiency.[52]

Forreststream properly authenticated the Loan Restructuring Agreement.

### 1.2  Mr. Shenkman's Objections to the Den Declaration

Mr. Shenkman also objects to Mr. Den's declaration concerning the terms of the parties' Restructuring Agreement.[53] He asserts that Mr. Den's recounting of the terms is based on the Agreement, which is hearsay, making Mr. Den's statements double hearsay.[54] But as described above, the Loan Restructuring Agreement is not hearsay. And to the extent Mr. Den's description of the terms is hearsay or otherwise inadmissible (*i.e.* because he lacks personal knowledge, as Mr. Shenkman argues),[55] the court does not rely on it to reach its conclusion. The parties' Agreement speaks for itself.

### 1.3  Mr. Shenkman's Objections to the Den and Mazukabzova Declarations

Mr. Shenkman objects to Mr. Den's and Ms. Mazukabzova's statements concerning the initial loan balance as of January 1, 2014.[56] He argues that their statements, based on Edmisano and Denware's books and records, are hearsay.[57] The court overrules the objection for two reasons. First, to the extent the statements concern amounts owed under the Restructuring Agreement, the Agreement is not hearsay and speaks for itself. Second, the outstanding initial-loan balance before restructuring seems irrelevant; the issue here is the Loan Restructuring Agreement and Mr. Shenkman's obligations under it.

---

[52] *See* Erno Decl. – ECF No. 89-1, ¶¶ 2–3, Exs. 1–2.

[53] Opposition at 10; Den Decl. – ECF No. 83, ¶ 8.

[54] Opposition at 10.

[55] *Id.*

[56] *Id.* at 10–11; Den Decl. – ECF No. 83, ¶ 7; Mazukabzova Decl. – ECF No. 82, ¶¶ 6–7.

[57] Opposition at 10.

### 1.4  Forreststream's Judicial Estoppel Argument

Forreststream argues that the court should judicially estop Mr. Shenkman from using the parties' restructuring negotiations because he previously claimed that those discussions were privileged. But because Mr. Shenkman never "succeeded" on that argument, the court does not preclude the evidence.

Federal law on judicial estoppel governs cases in federal courts regardless of whether they involve state law claims. *Johnson v. Oregon Dep't of Human Res. Rehab. Div.*, 141 F.3d 1361, 1364 (9th Cir. 1998); *Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 603 (9th Cir. 1996). Judicial estoppel is an equitable doctrine that prevents a party from benefitting by taking one position but then later seeking to benefit by taking a clearly inconsistent position. *Hamilton v. State Farm Fire & Cas. Ins. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). It "applies to positions taken in the same action or in different actions," *Samson v. NAMA Holdings, LLC*, 637 F.3d 915, 935 (9th Cir. 2010) (citing *Rissetto*, 94 F.3d at 605)), and is intended to protect the integrity of the judicial process by preventing a litigant from "playing fast and loose with the courts," *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990). "It also 'applies to a party's stated position whether it is an expression of intention, a statement of fact, or a legal assertion.'" *Samson*, 637 F.3d at 935 (quoting *Wagner v. Prof'l Eng'rs in California Gov't*, 354 F.3d 1036, 1044 (9th Cir. 2004)).

Judicial estoppel may be invoked by the court at its discretion. *Morris v. California*, 966 F.2d 448, 453 (9th Cir.1991). Several factors help determine whether judicial estoppel applies. *Hamilton*, 270 F.3d at 782–83 (citing *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001)). "'First, a party's later position must be 'clearly inconsistent' with its earlier position.'" *Id.* (quoting *New Hampshire*, 532 U.S. at 750). Second, the party must have "'succeeded in persuading a court to accept that party's earlier position so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled.'" *Id.* at 782 (quoting *New Hampshire*, 532 U.S. at 750) (internal quotations omitted). "'Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus no threat to judicial integrity.'" *Id.* at 782–83 (quoting *New Hampshire*, 532 U.S. at 750) (internal citations and quotations

omitted). Third, the court considers whether "'the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.'" *Id.* (quoting *New Hampshire*, 532 U.S. at 751). These factors, however, are not "'inflexible prerequisites or an exhaustive formula'" because "'[a]dditional considerations may inform the doctrine's application in specific factual contexts.'" *Id.* (quoting *New Hampshire*, 532 U.S. at 751).

Forreststream asserts that, to set aside default, Mr. Shenkman was required to show a meritorious defense.[58] And to do so, Mr. Shenkman relied on California's mediation privilege: he argued that the privilege excluded the parties' negotiations and written agreement, thus preventing Forreststream from proving its case. Forreststream asserts that Mr. Shenkman "succeeded" in presenting the privilege as a "meritorious defense" because the court vacated the entry of default and, "[h]ad the [c]ourt *not* found that [Mr.] Shenkman established a meritorious defense, 'it would have been an abuse of discretion to set aside the entry of default.'"[59]

But the court does not read the meritorious-defense requirement, or the vacating of default, to be so final on the matter. To escape default, a party must indeed "make *some showing* of a meritorious defense." *Haw. Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986) (emphasis added). But the burden is light: "'[a]ll that is necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts that, if true, would constitute a defense.'" *United States v. Aguilar*, 782 F.3d 1101, 1107 (9th Cir. 2015) (quoting *United States v. Signed Personal Check No. 730 Yubran S. Mesle*, 615 F.3d 1085, 1094 (9th Cir. 2010)). The court does not decide whether the factual allegations are true "when it decides the motion to set aside the default" — "that question would be the subject of the later litigation." *Id.* "This approach is consistent with the principle that 'the burden on a party seeking to vacate a default judgment is not extraordinarily heavy.' *Id.* (quoting *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 700 (9th Cir. 2001)).

---

[58] Forreststream's Supp. Brief – ECF No. 99 at 3.

[59] *Id.* (quoting *Haw. Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986)) (emphasis in original).

United States District Court
Northern District of California

1    Here, Mr. Shenkman presented the mediation privilege as a potentially meritorious defense.

2    Indeed, he committed an entire fifteen-page brief to argue that both the Agreement and the parties'

3    mediated communications, dating back to early 2014, were privileged.[60] He even "lodge[d] a

4    continuing objection to all of [Forreststream's] reference[s] to the communications."[61] In doing so,

5    Mr. Shenkman presented facts that, if proven true, could have shown that a mediation occurred,

6    potentially barring some or all of the Agreement and negotiations. He thus satisfied the

7    meritorious-defense requirement to get out of default.[62]

8        Mr. Shenkman was not required to prove, and the court did not conclude, that this defense *was*

9    *in fact* successful. That issue was (as it must have been) reserved for a later determination. And

10   when that happened — when the parties presented to the court Mr. Shenkman's mediation-based

11   objection to the Agreement — the court rejected it.[63] (The parties have not raised the issue

12   concerning the communications surrounding the Agreement.) So the court never decided the issue

13   in favor of Mr. Shenkman; it only allowed him to present it, and he has not "succeeded" on that

14   position.

15       Mr. Shenkman's current position — that the parties' mediated communications are

16   admissible — does not create the perception that the court was before, or is now being, misled,

17   and does not pose a threat to judicial integrity. The court declines to judicially estop Mr.

18   Shenkman from presenting evidence of the parties' negotiations.

19

20                                    *        *        *

21

22       In sum, the court overrules the parties' evidentiary objections.

23

24   [60] *See* Supp. Brief to Vacate Default – ECF No. 43 at 5–19.

25   [61] *Id.* at 5 n.3.

26   [62] He also argued two separate, potential defenses: (1) there were "serious questions as to whether
     there was a meeting of the minds" between the parties, and (2) "there [was] the defense that the pledge

27   of the shares was with or without recourse." (ECF No. 37 at 17.) He presents those two arguments in
     opposition to Forreststream's summary-judgment motion.

28   [63] Order – ECF No. 80.

United States District Court
Northern District of California

United States District Court
Northern District of California

### 2. Contract Claim

Forreststream asserts that Mr. Shenkman breached the Loan Restructuring Agreement, which is governed by California Law.[64]

The elements of a breach of contract claim under California law are: "(1) the existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) the resulting damages to the plaintiff." *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).

The parties do not dispute the Agreement's general terms — for example, the principal and interest owed, the maturity date, or the obligation to enter a pledge agreement. Mr. Shenkman does not dispute that, "to the extent any valid contract exists, his EIS stock was pledged to secure the loan."[65] Instead, Mr. Shenkman contends that he never signed the contract fully and is not bound by it.[66] He also argues that under the contract's terms — considering extrinsic evidence of the parties' negotiations — Forreststream cannot collect from him personally; instead, the loan is a nonrecourse loan that permits recovery only from his pledged stock.[67]

As a matter of law, the court holds Forreststream establishes all four elements of its contract claim: existence of the contract, its performance; Mr. Shenkman's nonperformance; and damages. Mr. Shenkman does not show any genuine issues of material fact. Indeed, the facts are undisputed: Mr. Shenkman signed the agreement (and is bound by it), and the contract's terms provide that he is personally responsible for the debt. The court grants summary judgment to Forreststream.

### 2.1 Existence of a Contract

Mr. Shenkman's challenges — lack of assent and a nonrecourse debt — are to the contract's existence and its terms.

---

[64] FAC ¶¶ 32–44; Loan Restructuring Agreement § 9.

[65] Opposition – ECF No. 89 at 18.

[66] *Id.* at 12–13.

[67] *Id.* at 14–17.

1

2

3

To establish that a contract exists, a party must demonstrate four factors: (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) a sufficient cause or consideration. Cal. Civ. Code § 1550; *Stewart v. Preston Pipeline Inc.*, 134 Cal. App. 4th 1565, 1585–86 (2005).

4

5

6

7

8

9

10

11

12

13

14

Mr. Shenkman first argues the second factor — consent — and contends that he did not sign the full contract and thus is not bound by it.[68] He declares that in April 2014, "Mr. Zaits, serving as the intermediary, presented [him] with a single page for signature and asked [him] to sign as confirmation of [his] agreement to the terms [they] had been discussing."[69] Mr. Shenkman "understood this to mean that Forreststream had agreed to [his] unequivocal condition that pledging [his] EIS shares meant that the restructured loan would be non-recourse."[70] He did not "understand this to be a final, binding agreement, but rather an agreement to work together in good faith to finalize the terms at a later date."[71] Mr. Shenkman signed the single page — the Loan Restructuring Agreement's signature page — but he never "reviewed, signed, or agreed to the first three pages of that document."[72] Thus, he asserts, he never assented to the terms of the Agreement.[73]

15

16

17

18

19

20

21

22

To form a contract, the parties must "reach mutual assent or consent on definite or complete terms." *Netbula, LLC v. Blindview Dev. Corp.*, 516 F. Supp. 2d 1137, 1155 (N.D. Cal. 2007). Mutual assent to a contract is based on the parties' objective and outward manifestations; "a party's 'subjective intent, or subjective consent, therefore is irrelevant.'" *Stewart*, 134 Cal. App. 4th at 1587 (quoting *Beard v. Goodrich*, 110 Cal. App. 4th 1031, 1040 (2003)). Ordinarily, a party "who signs an instrument which on its face is a contract is deemed to assent to all its terms." *Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1049 (2001). And, "[a] party cannot avoid the terms of a contract on the ground that he or she failed to

23

24

25

26

27

28

---

[68] *See id.* at 12–14.

[69] Shenkman Decl. ¶ 9.

[70] *Id.*

[71] *Id.*

[72] *Id.* ¶¶ 9–10.

[73] *See* Opposition at 12–13.

United States District Court
Northern District of California

read it before signing." *Id.* (citing *Hernandez v. Badger Constr. Equip. Co.*, 28 Cal. App. 4th 1791, 1816 (1994)). Indeed, it is "[a] cardinal rule of contract law . . . that a party's failure to read a contract, or to carefully read a contract, before signing it is no defense to the contract's enforcement." *Desert Outdoor Adver. v. Super. Ct.*, 196 Cal. App. 4th 866, 872 (2011). "'[I]n the absence of fraud, overreaching[,] or excusable neglect, . . . one who signs an instrument may not avoid the impact of its terms on the ground that he failed to read the instrument before signing it.'" *Stewart*, 134 Cal. App. 4th at 1588 (quoting *Hulsey v. Elsinore Parachute Center*, 168 Cal. App. 3d 333, 339 (1985)). A contract will thus facially evidence mutual assent where the parties signed it and there is no indication that the contract is conditional "or that [a party] did not intend to be bound by its terms." *See Stewart*, 134 Cal. App. 4th at 1587.

Mr. Shenkman does not argue that any party (including Forreststream) engaged in fraud. Indeed, Forreststream's representatives were not present when he signed the agreement, and he presents no evidence that there were, for example, misrepresentations or pressures to sign.[74] He also cannot establish reasonable reliance or excusable neglect because he failed to read the Agreement; "'[g]enerally, it is *not reasonable* to fail to read a contract.'" *Desert Outdoor Adver.*, 196 Cal. App. 4th at 873 (quoting *Brown v. Wells Fargo Bank, N.A.*, 168 Cal. App. 4th 938, 959 (2008)) (alteration and emphasis in original). And, in light of these fundamental rules of contract law, Mr. Shenkman's argument that he only received a signature page is unpersuasive. *See Vulcan Power Co. v. Munson*, 932 N.Y.S. 2d 68 (2011) ("A signer's duty to read and understand that which it signed is not diminished merely because [the signer] was provided with only a signature page.") (internal quotations omitted).

In sum, Mr. Shenkman assented to the contract and is bound by its terms.

Mr. Shenkman next argues that extrinsic evidence of the parties' negotiations establishes that the debt is nonrecourse, meaning, Forreststream cannot collect from him personally and can proceed only against the stock.[75]

---

[74] *See* Shenkman Decl. ¶ 9.

[75] *See* Opposition at 14–17.

Mr. Shenkman points to the parties' different accounts of their negotiations.[76] According to Mr. Shenkman, the negotiations "focused on [his] shares of EIS stock."[77] The parties "discussed the concept of reducing the principal debt by assigning some of it to Mr. Miloslavsky, and eliminating any personal liability in exchange for a secured interest in [Mr. Shenkman's] EIS shares."[78] "Mr. Den made clear that he wanted to obtain an interest in [Mr. Shenkman's] EIS shares" and, "[a]lthough [Mr. Shenkman] was not eager to pledge the shares," he "was willing to do so on the condition that the restructured loan be recourse as to the shares only."[79] Indeed, Mr. Shenkman "communicated repeatedly to Mr. Den and/or his associates, and to [the parties'] intermediaries, that [he] would not pledge [his] shares in EIS unless recourse under the restructured loan was limited to those shares" and his personal liability was eliminated.[80] Now, he argues, "[t]o the extent the representations made to Mr. Shenkman" differ from "the pages of the [Loan Restructuring Agreement] that were appended to [his] signature, there was no meeting of the minds, and hence, no agreement."[81]

Under the plain language of the contract, this argument fails. The Agreement establishes Mr. Shenkman's personal liability. Mr. Shenkman (the borrower) owed and agreed to repay Forreststream (the lender) $1,626,370 in accrued interest and $6,681,350 in principal, plus interest.[82] Mr. Shenkman agreed to repay the loan within twenty-four months[83] in U.S. Dollars, and agreed to indemnify Forreststream for any exchange-rate loss "[i]f any sum due from [Mr. Shenkman] under th[e] Agreement or under any order or judgment connected with th[e] Agreement has to be converted from one currency to another *in order to make or enforce any*

---

[76] *See id.* at 13–14, 16.

[77] Shenkman Decl. ¶ 7.

[78] *Id.*

[79] *Id.*

[80] *Id.* ¶ 8.

[81] Opposition at 14.

[82] Loan Restructuring Agreement § 2.

[83] *Id.* § 4.

*claim against [Mr. Shenkman].*"[84] And the parties agreed that all payments would "be made without any deduction or withholding for or on account of any set-off, counterclaim or tax unless such is required by law."[85] These terms plainly obligate Mr. Shenkman to pay the debt, personally and in full, and thus contemplate his personal liability in the event of default — *i.e.* a recourse debt. No term indicates that the parties intended the debt to be nonrecourse. *Cf. Veleron Holding, B.V. v. Morgan Stanley*, 117 F. Supp. 3d 404, 425 (S.D.N.Y. 2015) ("Generally, courts characterize debts as non-recourse only when that character is apparent from the language of the instrument creating the debt.").

Mr. Shenkman nonetheless contends that because the contract does not contain an integration clause, he can introduce extrinsic evidence of the parties' negotiations to show that the parties intended that he was not personally liable and that Forreststream can proceed only against the stock. Forreststream counters that the Agreement is integrated (at least with respect to whether Mr. Shenkman is personally liable).

"An integrated agreement is a writing or writings constituting a final expression of one or more terms of an agreement." 2 Witkin, Cal. Evid. 5th Docu. Evid. § 66(1) (5th ed. 2012) (quoting Rest. 2d, Contracts § 209(1)). "An integration may be partial as well as complete. In other words, the parties may intend a writing to finally and completely express certain terms of their agreement rather than the agreement in its entirety." *Hayter Trucking, Inc. v. Shell Western E&P, Inc.*, 18 Cal. App. 4th 1, 14 (1993). Under California's parol evidence rule, "[t]erms set forth [in an integrated agreement] . . . may not be contradicted by evidence of a prior agreement or of a contemporaneous oral agreement." Cal. Civ. Proc. Code § 1856(a). The parol evidence rule thus bars extrinsic evidence that contradicts an integrated agreement (or integrated terms therein), but "extrinsic evidence may be used to prove elements of the agreement not reduced to writing." *Hayter*, 18 Cal. App. 4th at 14.

---

[84] *Id.* §§ 6.2, 6.4 (emphasis added).

[85] *Id.* § 6.5.

United States District Court
Northern District of California

1    The court determines the question of "integration" as a matter of law. *See Esbensen v.*

2    *Userware Int'l, Inc.*, 11 Cal. App. 4th 631, 637 n.4 (1992). To do so, the court considers four

3    factors. *See Banco Do Brasil, S.A. v. Latian, Inc.*, 234 Cal. App. 3d 973, 1002–03 (1991),

4    *overruled on other grounds by Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit*

5    *Ass'n*, 55 Cal. 4th 1169 (2013). The court first asks whether "the written agreement appear[s] on

6    its face to be a complete agreement." *Id.* at 1002. "[T]he presence of an 'integration' clause will be

7    very persuasive, if not controlling, on this issue." *Id.* at 1002–03. Second, the court asks whether

8    "the alleged oral agreement directly contradict[s] the written instrument." *Id.* at 1003. Third,

9    whether "the oral agreement might naturally have been made as a separate agreement." *Id.* And

10   finally, "would evidence of the oral agreement be likely to mislead the trier of fact." *Id.*

11   The Agreement is not complete on its face with respect to *all* terms. The parties expressly

12   contemplated a separate agreement: they agreed to later enter a pledge agreement. Forrestream

13   concedes that the Agreement "does not dictate the terms of the contemplated pledge."[86] But it is

14   integrated with respect to Mr. Shenkman's personal liability to repay the debt. His personal

15   liability is plain. The stock pledge plainly secures the loan.

16   Mr. Shenkman seeks to introduce evidence that contradicts these terms. He presents evidence

17   that the parties negotiated a nonrecourse debt through which Forrestream's sole remedy for a

18   default was against the EIS shares. For example, he declares that during the parties' negotiations,

19   he informed Mr. Den "and/or his associates" that he "would not pledge [his] shares in EIS unless

20   recourse under the restructured loan was limited to those shares."[87] And he says that, when

21   presented with the Agreement's signature page, he understood "that Forrestream had agreed to

22   [his] unequivocal condition that pledging [his] shares meant that the restructured loan would be

23   non-recourse."[88] This evidence, if allowed to define the terms of the parties' agreement, would

24   contradict the express terms obligating Mr. Shenkman to personally repay the debt.

25

26

---

[86] Reply – ECF No. 90 at 17.

27   [87] Shenkman Decl. ¶ 8.

28   [88] *Id.* ¶ 9.

Moreover, whatever the parties' negotiations, they signed a contract that defines the debt and provides only for a separate stock pledge. Mr. Shenkman cannot introduce extrinsic evidence to contract the loan's plain terms. To the extent that he had a different subjective understanding of the loan, that argument fails for the same reasons. Any subjective understanding of the contract's terms is legally irrelevant. *See Stewart*, 134 Cal. App. 4th at 1587 ("[A] party's subjective intent, or subjective consent, . . . is irrelevant.") (internal quotations omitted). The cases that Mr. Shenkman cites are factually distinguishable and do not change this outcome. *See Bowman v. CMG Mortg. Inc.*, No. C 07-03140 SI, 2008 U.S. Dist. LEXIS 58953, at *9–*11 (N.D. Cal. Aug. 4, 2008) (finding a genuine dispute regarding the parties' mutual assent to a performance-based modification of a written contract); *Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 215 (2006) (concluding that there was no meeting of the minds because the alleged contract's terms were too uncertain).

\*     \*     \*

The parties do not dispute, and the court holds that there are no genuine issues of material fact in dispute about, the three remaining elements of Forreststream's breach-of-contract claim. The remaining elements are as follows.

### 2.2   Forreststream's Performance

The second element is the plaintiff's performance or excuse for nonperformance. *See Oasis West Realty*, 51 Cal. 4th at 821. Forreststream presented unrebutted evidence that it performed under the contract. Mr. Den declares that Forreststream performed its obligations — *i.e.* it restructured the loan, reduced the amount owed by Mr. Shenkman, extended the maturity date, and allowed interest to accrue without payment until maturity.[89] Forreststream establishes this element as a matter of law.

---

[89] Den Decl. – ECF No. 83, ¶¶ 8–9; Loan Restructuring Agreement, Recitals (C)–(F), §§ 1, 2, 4.

1

2        **2.3  Mr. Shenkman's Breach**

3            Forreststream also established the third element — the defendant's breach. *See Oasis West*

4    *Realty*, 51 Cal. 4th at 821. The Loan Restructuring Agreement obligated Mr. Shenkman to pay

5    Forreststream $1,626,370 in accrued interest and $6,681,350 in principal, plus 10% annual interest

6    on the principal.[90] This payment was due by April 29, 2016.[91] Mr. Shenkman also agreed to enter

7    into a pledge agreement by June 11, 2014.[92]

8            Mr. Shenkman breached these obligations. He has yet to pay any amount due under the

9    restructured loan; it "remains fully outstanding."[93] And he did not pledge his shares by June 11,

10   2014.[94] (He did, however, pledge his shares under a stipulated court order.[95]) Mr. Shenkman offers

11   no contrary evidence.

12

13       **2.4  Resulting Damage**

14           The fourth element in a breach-of-contract claim is resulting damage. *See Oasis West Realty*,

15   51 Cal. 4th at 821. "In California, the appropriate amount of damages for breach of contract 'is the

16   amount which will compensate the party aggrieved for all the detriment proximately caused

17   thereby . . . .'" *Chevron TCI, Inc. v. Carbone Props. Manager, LLC*, No. C-08-0782 (JCS), 2009

18   WL 929060, at *6 (N.D. Cal. April 3, 2009) (quoting Cal. Civ. Code § 3300). "'The detriment

19   caused by the breach of an obligation to pay money only, is deemed to be the amount due by the

20   terms of the obligation, with interest thereon.'" *Id.* (quoting Cal. Civ. Code § 3302); *see also*

21   *Lucasfilm, LTD. v. Canal Toys*, No. C 11-01639 WHA, 2012 WL 685415, at *3 (N.D. Cal. Mar. 2,

22   2012).

23

24   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
     [90] Loan Restructuring Agreement  §§ 2, 3, 4, Recital (E).

25   [91] *Id.* § 4.

26   [92] *Id.* § 5.

27   [93] Den Decl. – ECF No. 83, ¶ 10.
     [94] *Id.*

28   [95] *See* ECF Nos. 41, 53.

United States District Court
Northern District of California

1    Here, under the Loan Restructuring Agreement, Mr. Shenkman agreed to repay $6,681,350 in

2   principal and $1,626,370 in interest, carried over from the Edmisano and Denware loans.[96] He also

3   agreed to pay interest on the principal amount at a rate of 10% per annum, calculated "on the basis

4   of a year of 360 days and the actual number of days elapsed[,]" from January 1, 2014 (the date he

5   defaulted on the original loans).[97] Ten percent of the carried-over principal amount is equal to

6   $668,135 in interest per year; based on a 360-day year, that is $1,855.93 in interest per day.

7   Between January 1, 2014, and the date of Forrestream's summary-judgment motion, 1,078 days

8   elapsed, amounting to $2,000,693.54 in additional interest that Forrestream is entitled to but has

9   not yet received. Interest continues to accrue at $1,855.93 per day until the date of judgment.

10    In sum, Forrestream has shown that it suffered, and is entitled to receive, contract damages in

11   the amount of (a) $10,308,412.54 plus (b) $1,855.93 multiplied by the number of days elapsed

12   between (i) December 14, 2016, and (ii) the date of judgment.

13    Mr. Shenkman also caused damage as a matter of law by failing to pledge his EIS stock by

14   June 11, 2014.[98] If Mr. Shenkman had pledged the stock as promised, Forrestream could have

15   looked to those shares to recover the value of Mr. Shenkman's missed loan payments. At the

16   court's behest, Mr. Shenkman stipulated in this litigation to pledge the shares "to secure

17   performance of [his] obligations to Forrestream, as determined in this Action."[99] But that was to

18   preserve the status quo. Moreover, under the stipulated injunction, Forrestream cannot exercise

19   secured-creditor remedies absent further order of the court.[100]

20

21                                   *       *       *

22    There are no genuine disputes of material fact. The court grants Forrestream's summary-

23   judgment motion. Mr. Shenkman is personally liable for the loan, and he also breached his

24

25   [96] Loan Restructuring Agreement, Recital (E), § 2.

26   [97] Id. Recitals (C)–(D), §§ 3, 6.1.

     [98] See id. § 5.

27   [99] See Stipulated Order for Injunctive Relief – ECF No. 41 at 2.

28   [100] Id. at 3.

obligation to pledge shares. He agreed in the stipulated judgment to pledge those shares to secure performance of his obligation to Forreststream, "as determined in this Action."[101] As discussed at the hearing, the court understands that Forreststream's proposal is to remove the following language from the stipulated order: "ORDERED, that absent further order of the Court, Forreststream shall exercise no secured creditor remedies in respect of the pledge of the @mosphere Interests or the EIS shares set forth herein."[102] This will allow Forreststream to exercise its secured-creditor remedies.

## CONCLUSION

The court grants Forreststream's motion for summary judgment. The parties must confer and submit a stipulated form of judgment within one week.

**IT IS SO ORDERED.**

Dated: March 24, 2017

_____
LAUREL BEELER
United States Magistrate Judge

---

[101] *Id.* at 2.

[102] *Id.* at 3.