United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| FORRESTSTREAM HOLDINGS LIMITED,<br><br>    Plaintiff,<br><br>    v.<br><br>GREGORY SHENKMAN, et al.,<br><br>    Defendants. | Case No. 16-cv-01609-LB<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SANCTIONS**<br><br>Re: ECF No. 328 |

## INTRODUCTION

Defendant Gregory Shenkman owes plaintiff Forreststream Holdings Ltd. more than $5.3 million on the judgment in this case.[1] Mr. Shenkman has not made any payments toward this judgment in the more than twenty months since judgment was entered.[2] On April 13, 2018, Forreststream issued discovery requests to Mr. Shenkman to try to discover what assets he has to satisfy the judgment.[3] Mr. Shenkman refused to provide meaningful responses.[4] On June 14, 2018,

---

[1] *See* Mackintosh Third Aff. – ECF No. 314 at 2. For a fuller description of the subject matter and procedural history of this case, see the court's December 6, 2018 order, which the court incorporates here by reference. *Forreststream Holdings Ltd. v. Shenkman*, No. 16-cv-01609-LB, 2018 WL 6421866 (N.D. Cal. Dec. 6, 2018) (Order – ECF No. 339). Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *See* Kampfner Decl. – ECF No. 329 at 2 (¶ 4).

[3] Forreststream Discovery Reqs. – ECF No. 292 at 7–33 (redacted), 296-4 at 8–34 (under seal).

ORDER – No. 16-cv-01609-LB

the court "order[ed] Mr. Shenkman to produce documents in accordance with Forreststream's document requests and answer Forreststream's interrogatories, and . . . provide full ownership information for each entity in which he holds an interest (of any kind) and produce current balance sheets and three years of income statements and general ledgers for each such entity" (the "June 14 Order").[5] Mr. Shenkman failed to do so.[6] On November 27, 2018, with leave of the court,[7] Forreststream filed a motion for sanctions for Mr. Shenkman's failure to comply with his discovery obligations and the court's June 14 Order.[8]

Forreststream submits that the most appropriate and measured sanction is to allow it discovery of certain hard-copy documents (the "Hard-Copy Documents") and electronic data-storage devices (the "Data-Storage Devices," and together with the Hard-Copy Documents, the "Records"). The Records were found at Mr. Shenkman's former residence at 28 Meadow Hill Drive, Tiburon, California 94920 ("28 Meadow Hill"), after Mr. Shenkman defaulted on his mortgage and a Forreststream affiliate, Eliperio Holdings Ltd., bought 28 Meadow Hill at a foreclosure sale.[9] Mr. Shenkman objects to Forreststream's proposal regarding his laptop but did not otherwise object to or oppose Forreststream's motion or its proposed protocol.[10]

The court held a hearing on December 6, 2018. The court finds that Mr. Shenkman willfully failed to comply with his discovery obligations and the court's June 14 Order. The court sanctions

---

[4] *See* Shenkman Discovery Resps. – ECF No. 292 at 34–67.

[5] Order – ECF No. 299 at 1–2.

[6] *See* Forreststream Mot. – ECF No. 328 at 6; *accord* Shenkman Letter – ECF No. 318 (stating on November 9, 2018, that "Mr. Shenkman, through counsel, has been proactively engaging with Forreststream's counsel in an attempt to bring himself in compliance with the Court's prior discovery order" and "is optimistic that an accord can be reached with Forreststream regarding compliance with the order," thereby acknowledging that Mr. Shenkman was not in compliance with the court's order); *see also* Shenkman Resp. – ECF No. 336 (not denying that Mr. Shenkman has failed to comply with the June 14 Order and failed to produce the documents and information that the court ordered him to produce).

[7] Order – ECF No. 323.

[8] Forreststream Mot. – ECF No. 328.

[9] *Id.* at 3.

[10] Shenkman Resp. – ECF No. 336.

Mr. Shenkman and allows Forreststream to take discovery into the Records, subject to the modified protocol that the court sets forth below.

## STATEMENT

### 1. The Hard-Copy Documents

Forreststream proposes that

> Within two (2) weeks of entry of an order approving the Protocol, [Mr. Shenkman's counsel Walter C.] Cook and an attorney for Forreststream will meet at the Property at a mutually agreeable time and jointly review all paper Meadow Hill Records. Documents that Mr. Cook and Forreststream's counsel agree are responsive to the June 14 Order and nonprivileged will be copied and provided to Forreststream; documents they agree are non-responsive or privileged may be removed by Mr. Cook and returned to Mr. Shenkman. Documents that are subject to dispute as to either privilege or responsiveness will be set aside until the Court can resolve the dispute.[11]

Mr. Shenkman did not object to Forreststream's proposal or offer any counterproposal.[12]

At the December 6, 2018 hearing, Mr. Cook said that he could make himself available after the hearing to go to 28 Meadow Hill that day and review the Hard-Copy Documents with counsel for Forreststream.[13] After the hearing, Mr. Shenkman instructed Mr. Cook not to participate in any review of the Hard-Copy Documents pending a written order by the court directing a review.[14] As of today, the parties have not reviewed the Hard-Copy Documents.

### 2. The Data-Storage Devices

Forreststream proposes that

> Within one (1) week of entry of an order approving the Protocol, an IT professional of Forreststream's choosing will copy the contents of Mr. Shenkman's personal computer and other computers, servers, hard drives, memory sticks, and any other data storage devices on the Property. Mr. Shenkman shall provide all passwords, codes, keys, and other means of access to permit such copying immediately upon

---

[11] Forreststream Mot. – ECF No. 328 at 16.

[12] *See* Shenkman Resp. – ECF No. 336.

[13] Hr'g Argument – ECF No. 340 (5:45–6:11).

[14] *See* Forreststream Letter – ECF No. 342.

ORDER – No. 16-cv-01609-LB         3

demand prior to the IT professional's visit to the Property. The IT professional will make the information available to Mr. Cook and an attorney for Forreststream through a secure data site. Within two (2) weeks of receipt of access to the data site, Forreststream's counsel will notify Mr. Cook of the documents it believes are responsive to the June 14 Order. Within one (1) week of such notice, Mr. Cook will designate any documents he believes to be non-responsive or privileged. Mr. Cook and Forreststream's counsel shall meet and confer regarding any dispute over responsiveness or privilege and the Court shall resolve any dispute which cannot be resolved through the meet and confer process. Forreststream shall be entitled to retain any documents that it identifies as responsive and either (i) Mr. Cook does not designate as non-responsive or privileged; or (ii) the Court determines to be responsive or non-privileged notwithstanding Mr. Cook's contrary designation. Any documents agreed by Forreststream or determined by the Court to be privileged shall not be retained by Forreststream or used in any proceeding.

Forreststream further stated at the December 6, 2018 hearing that its chosen IT professional was the litigation-support staff at White & Case LLP (counsel for Forreststream), who could copy the contents of the Data-Storage Devices without any cost to Forreststream or Mr. Shenkman.

Mr. Shenkman did not object to Forreststream's proposal regarding the Data-Storage Devices other than his laptop (i.e., he did not object to Forreststream's proposal regarding other computers, servers, hard drives, memory sticks, etc.) or offer any counterproposal with respect to those other devices.[15]

Mr. Shenkman "objects in the strongest possible terms" to White & Case litigation-support staff's being the IT professional that copies his laptop.[16] Mr. Shenkman proposes that a neutral third-party perform the copying.[17] (Mr. Shenkman originally proposed that this third-party copying be done at Forreststream's expense,[18] but then stated at the December 6, 2018 hearing that he would be willing to split the cost with Forreststream.[19]) Mr. Shenkman further proposes that the copy be stored under a two-signature account, where both Forreststream and Mr. Shenkman (or

---

[15] *See* Shenkman Resp. – ECF No. 336.

[16] Hr'g Argument – ECF No. 340 (11:20–11:32, 24:15–24:35); *accord* Shenkman Resp. – ECF No. 336.

[17] Shenkman Resp. – ECF No. 336 at 2 (¶¶ 3–4).

[18] *Id.* (¶ 3).

[19] Hr'g Argument – ECF No. 340 (11:32–11:50).

ORDER – No. 16-cv-01609-LB    4

1 their authorized agents) would need to appear to gain access.[20] (Mr. Shenkman originally proposed that the copy be stored in a safety-deposit box at a bank or third-party vendor,[21] but then stated at the December 6, 2018 hearing that the copy could be deposited with the court instead.[22]) Mr. Cook stated at the December 6, 2018 hearing that he has the password to Mr. Shenkman's laptop, which Mr. Shenkman provided to him "to use for the purpose of getting a copy with a third-party vendor, like Apple."[23]

Forreststream opposes Mr. Shenkman's counterproposals, stating that (1) the Apple-store backup that Mr. Shenkman proposes is not robust enough to create a full backup of Mr. Shenkman's laptop, (2) the cost of having a third party copy Mr. Shenkman's devices is not as low as Mr. Shenkman estimates, and (3) Forreststream cannot suffer a process whereby Mr. Shenkman has the ability to block Forreststream's attempts to take discovery or exercise a "veto."[24]

## ANALYSIS

### 1. Mr. Shenkman's Noncompliance Is Willful and Sanctionable

The court finds that Mr. Shenkman's refusal to meaningfully respond to Forreststream's discovery requests and to comply with the court's June 14 Order is willful and sanctionable.

Forreststream issued its discovery requests eight months ago, and the court entered its June 14 Order six months ago. Mr. Shenkman has refused to provide meaningful responses to Forreststream's request and to comply with the court's order. At no point did Mr. Shenkman file a motion seeking relief from Forreststream's discovery requests or the court's order to address his noncompliance.[25] Instead, he did not comply with the court's order and did so without notice or order from the court.

---

[20] Shenkman Resp. – ECF No. 336 at 2–3 (¶¶ 5, 7).

[21] *Id.*

[22] Hr'g Argument – ECF No. 340 (11:50–12:00).

[23] *Id.* (14:04–14:15).

[24] *Id.* (13:21–14:01).

[25] *See* Docket.

ORDER – No. 16-cv-01609-LB 5

When confronted, he offered vague promises that he would comply or excuses for his failure to comply — and then he continued to delay, avoid, and fail to comply. For example, after the court's June 14 Order to Mr. Shenkman to respond to Forreststream's discovery requests by June 21, 2018, Mr. Shenkman produced no responses. When Forreststream alerted the court on June 22, 2018, that Mr. Shenkman had failed to comply with the court's June 14 Order and moved for leave to file a motion for sanctions, Mr. Shenkman claimed that he had been ill and ordered on bed rest for five to seven days.[26] He offered no explanation as to why he did not meaningfully respond to Forreststream's discovery requests in the two months since Forreststream had issued them before he purportedly took ill.[27] He offered no explanation as to why, if he had taken ill, he did not move the court for a modification of the June 14 Order instead of unilaterally failing to comply.[28] *Cf. In re Google Litig.*, No. C-08-03172 RMW (PSG), 2011 WL 6951972, at *5–6 (N.D. Cal. July 8, 2011) (report and recommendation) (recommending imposition of sanctions, because "the time for arguments about [the burden of complying with a discovery order] was before the order issued, not after. . . . Eventual but nonetheless tardy compliance with court orders and with legitimate discovery requests does not excuse discovery abuse, nor does it preclude impositions of sanctions. Otherwise, parties would be free to flout their obligations until a trial court utterly loses patience with them, and thereby embroil trial judges in day-to-day supervision of discovery.'") (quoting *Kraschewski v. State Farm Gen. Ins. Co.*, No. C 79 1261 TEH, 1983 WL 656, at *9 (N.D. Cal. June 9, 1983)), *adopted*, No. C-08-03172 RMW, 2012 WL 27698 (N.D. Cal. Jan. 5, 2012) (imposing sanctions). He promised that he would send his responses to his counsel that day so that his counsel could produce them to Forreststream that day or shortly thereafter.[29] He then failed to do so.[30]

---

[26] Shenkman Letter – ECF No. 305 at 1.

[27] *See id.*

[28] *See id.*

[29] *Id.* at 2.

[30] *See* Forreststream Mot. – ECF No. 328 at 6; *accord* Shenkman Letter – ECF No. 318.

Another example is that on November 9, 2018 — five months after the court entered its June 14 Order — Mr. Shenkman stated that he had still not complied with the court's order because he was enduring situational stress on account of his move out from 28 Meadow Hill (which occurred in September 2018) and because his mother had recently been hospitalized.[31] He offered no explanation as to why he had not responded to Forreststream's discovery requests or complied with the court's June 14 Order in the months before he moved out of 28 Meadow Hill or his mother was hospitalized.[32] He then continued not to produce anything in the additional month that has elapsed between then and now.[33]

The court finds that Mr. Shenkman's violation of his discovery obligations and the court's June 14 Order was willful, inexcusable, and merits sanctions. The outcome might have been different if Mr. Shenkman had begun a partial production in response to Forreststream's discovery requests and the court's June 14 Order. For example, Mr. Shenkman could have retrieved his personal bank-account and credit-card statements months ago and produced them. A partial production might evince at least some good faith. Instead, for the past eight months, Mr. Shenkman has produced nothing. The court imposes as a sanction the protocol set forth in the next sections.

**2. The Court Approves in Part and Modifies in Part Forreststream's Protocol**

Forreststream seeks, as sanctions, only the entry of its proposed protocol for discovery into the Records.

The court can order a discovery protocol regarding the Records even if Mr. Shenkman's conduct were not sanctionable. As a judgment creditor, Forreststream is entitled to broad discovery regarding Mr. Shenkman's assets. *Ryan Inv. Corp. v. Pedregal de Cabo San Lucas*, No. C 06-3219 JW (RS), 2009 WL 5114077, at *1 (N.D. Cal. Dec. 18, 2009). "'[T]he judgment creditor must be given the freedom to make a broad inquiry to discover hidden or concealed assets

---

[31] Shenkman Letter – ECF No. 318.

[32] *See id.*

[33] *See* Forreststream Mot. – ECF No. 328 at 6; *accord* Shenkman Resp. – ECF No. 336.

ORDER – No. 16-cv-01609-LB                    7

of the judgment debtor.'" *Id.* (some internal quotation marks omitted) (quoting *1st Tech., LLC v. Rational Enters. LTDA*, No. 2:06-cv-0110-RLH-GWF, 2007 WL 5596692, at *4 (D. Nev. Nov. 13, 2007)). "Further, due to its broad scope, a party is free to use any means of discovery allowable under the Federal Rules of Civil Procedure." *Id.* (citing *SEC v. Tome*, No. 81 Civ. 1836 (MP), 1987 WL 9415, at *1 (S.D.N.Y. Apr. 3, 1987); Fed. R. Civ. P. 69 advisory committee's note to 1970 amendment). "'A judgment creditor is therefore ordinarily entitled to a very thorough examination of a judgment debtor with respect to its assets, including discovery of the identity and location of any of the judgment debtor's assets, wherever located.'" *Id.* (internal brackets omitted) (quoting *British Int'l Ins. Co. Ltd. v. Seguors La Republica*, No. 90Civ.2370 (JFK)(FM), 2000 WL 713057, at *5 (S.D.N.Y. June 2, 2000)). The court has the inherent authority to fashion a discovery protocol into the Records for information responsive to Forreststream's discovery requests. *Cf., e.g.*, *Satmodo, LLC v. Whenever Commc'ns, LLC*, No. 3:17-cv-192-AJB-NLS, 2018 WL 3495832, at *4 (S.D. Cal. July 20, 2018) (court has discretion to fashion inspection protocol for discovery of defendant's computers) (citing cases).

That said, it is significant for context purposes that this is not simply a run-of-the-mill discovery dispute and that it instead comes before the court on a motion for sanctions — after Forreststream issued its discovery requests eight months ago, after the court ordered Mr. Shenkman six months ago to respond and produce documents and information, and after Mr. Shenkman refused to provide meaningful responses. Mr. Shenkman (1) has failed to comply with his discovery obligations and (2) has willfully violated the court's order for the past six months.

This situation is of Mr. Shenkman's own making. He has had months to respond to Forreststream's discovery requests and to comply with the court's June 14 Order. Had he done so, he could have avoided this situation. Mr. Shenkman cannot now dictate the review protocol or complain that he is being deprived of his laptop. (The laptop is at issue only because Mr. Shenkman has not complied with his discovery obligations for the past eight months, thus necessitating discovery into the laptop.) Mr. Shenkman cannot now demand that Forreststream must bear costs associated with the technical aspects of the review process (e.g., by demanding that Forreststream pay for or split the cost of copying the contents of his data-storage devices) or

that the Records should be stored somewhere where Forreststream is dependent on his cooperation to review them (e.g., by demanding that copies be deposited in a safety-deposit box that Forreststream cannot access without his presence).

The court adopts Forreststream's proposed protocol with respect to the Hard-Copy Documents. As set forth in more detail in the protocol below, Mr. Cook and an attorney for Forreststream must meet at 28 Meadow Hill to jointly review all Hard-Copy Documents. Mr. Shenkman has already delayed this process by instructing Mr. Cook not to participate in a review, after Mr. Cook represented to the court that he would participate.[34] This delay tactic cannot continue. If Mr. Cook does not participate in this process by December 21, 2018, the court will deem that to be a waiver by Mr. Shenkman of any right to object to Forreststream's reviewing or copying any Hard-Copy Documents, and Forreststream may review and copy the Hard-Copy Documents on its own.

The court adopts in part and modifies in part Forreststream's proposal with respect to the Data-Storage Devices. For the reasons that Forreststream and the court stated on the record at the December 6, 2018 hearing, the court overrules Mr. Shenkman's objections and adopts Forreststream's proposal that White & Case's litigation-support team perform the copying of the Data-Storage Devices. Mr. Shenkman is ordered to provide all passwords, codes, keys, and other means of access to permit the copying of all Data-Storage Devices. The litigation-support team thereafter may copy the contents of the Data-Storage Devices (including by taking forensic images of the devices).

The court makes the following modifications to Forreststream's proposed protocol. First, if Mr. Shenkman provides all passwords, codes, keys, and other means of access to permit the copying of all Data-Storage Devices, White & Case's litigation-support team must prioritize the copying of Mr. Shenkman's laptop and, after copying is complete, return the laptop to him. Second, after copying is complete, the litigation-support team must first make the copied data

---

[34] *See* Forreststream Letter – ECF No. 342.

available to Mr. Cook for two weeks to allow him to review the data for non-responsiveness and privilege and log those records that he believes are non-responsive or privileged. After the initial two-week period, White & Case may review the copied data, other than the records that Mr. Cook has designated as non-responsive or privileged, for responsiveness. White & Case may not share the data with Forreststream or use it for any purpose until it identifies those records in the data that it believes are responsive to its requests and gives Mr. Shenkman two weeks to raise any objections.

**PROTOCOL**

The court orders the following protocol regarding discovery of the Records:

1. **Hard-Copy Documents**

    1. On or before December 21, 2018, Mr. Shenkman's counsel Walter C. Cook and an attorney for Forreststream must meet at 28 Meadow Hill at a mutually agreeable time and jointly review all Hard-Copy Documents. Documents that Mr. Cook and Forreststream's counsel agree are responsive to the June 14 Order and nonprivileged will be copied for Forreststream; documents they agree are non-responsive or privileged may be removed by Mr. Cook and returned to Mr. Shenkman. Documents that are subject to dispute as to either privilege or responsiveness will be set aside until the parties or the court can resolve the dispute.

    2. Absent further order of the court, if Mr. Cook does not meet counsel for Forreststream at 28 Meadow Hill and participate in this process by December 21, 2018, Mr. Shenkman will be deemed to have waived any right to object to Forreststream's reviewing or copying any Hard-Copy Documents, and Forreststream may review and copy the Hard-Copy Documents on its own.

2. **Data-Storage Devices**

    1. On or before December 13, 2018, Mr. Shenkman must provide all passwords, codes, keys, and other means of access to all Data-Storage Devices to counsel for Forreststream at White & Case. Counsel may share these passwords, codes, keys, and

means of access with the litigation-support staff at White & Case but may not share them with any other person or entity (including Forreststream).

2. Once the litigation-support staff at White & Case receives Mr. Shenkman's passwords, codes, keys, and other means of access and verifies that they can access the Data-Storage Devices, the litigation-support staff may copy the contents of the Data-Storage Devices (including by taking forensic images of the devices). The litigation-support staff must prioritize copying the contents of Mr. Shenkman's laptop and must complete the copying of the laptop within two business days of when Mr. Shenkman provides the passwords, codes, keys, and other means of access to all Data-Storage Devices (including but not limited to his laptop). The litigation-support staff must then return Mr. Shenkman's laptop to him.

3. For each Data-Storage Device, after the litigation-support staff finishes copying the device's data, it must make that data available to Mr. Cook through a secure data site. Mr. Cook then will have two weeks to review that data for non-responsiveness privilege. The litigation-support staff may not make that data available either to Forreststream or to its counsel at White & Case during this time.

4. During the initial two-week period, Mr. Cook may designate those records in the copied data that he believes to be non-responsive or privileged. Mr. Cook must log any such records on (separate) non-responsive and privilege logs according to the requirements set out for logs in the court's standing order.

5. After the initial two-week period, counsel for Forreststream at White & Case may review the copied data, other than the records designated by Mr. Cook as non-responsive or privileged.

6. Counsel for Forreststream may not share the copied data with any other person or entity (including Forreststream) until and unless it first identifies for Mr. Cook the records in the data that it believes are responsive to the court's June 14 Order and gives Mr. Cook two weeks to object that those records are non-responsive or privileged.

7. Data that is subject to dispute as to either privilege or responsiveness will be set aside until the parties or the court can resolve the dispute.

8. Pursuant to Federal Rule of Evidence 502(d), and to provide Mr. Shenkman with a backup safeguard for any potential claims of privilege, the court orders that the fact that disclosure of the data on the Data-Storage Devices was compelled and that counsel for Forreststream might have reviewed that data will not constitute a waiver of any privilege over that data, unless and until Forreststream identifies for Mr. Cook the records in the data that it believes are responsive and Mr. Cook either agrees that those records are non-privileged or fails to timely object that they are privileged. (Mr. Cook may object that records that Forreststream identifies as responsive are privileged even if the records were not designated as privileged during the initial two-week review period.)

If any disputes arise during this discovery process, the parties must meet and confer and then, if they are unable to resolve their disputes, must submit a joint letter brief in accordance with the court's standing order.

# NOTICE AND WARNING REGARDING CONTEMPT AND FURTHER SANCTIONS

The court repeats its warning from the December 6, 2018 hearing: Mr. Shenkman must comply with all court orders. Failure to comply with a court order constitutes contempt, which may subject Mr. Shenkman to further sanctions, including monetary sanctions and incarceration.

A contempt charge can be civil or criminal in nature. *See Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 778 (9th Cir. 1983). Criminal contempt is punitive. "The primary purpose of criminal contempt is to punish past defiance of a court's judicial authority, thereby vindicating the court." *Id.* (citing *Shillitani v. United States*, 384 U.S. 364, 369 (1966); *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 441 (1911)). Possible penalties for criminal contempt include fines payable to the court and imprisonment. *See* 18 U.S.C. § 401; Fed. R. Crim. P. 42.

"Civil contempt is characterized by the court's desire to compel obedience to a court order, or to compensate the contemnor's adversary for the injuries which result from the noncompliance."

*Falstaff Brewing*, 702 F.2d at 778 (citing *Shillitani*, 384 U.S. at 370; *Gompers*, 221 U.S. at 448–49). "[A] district court has 'wide latitude in determining whether there has been a contemptuous def[iance] of its order.'" *Stone v. City and Cty. of San Francisco*, 968 F.2d 850, 856 (9th Cir. 1992) (quoting *Gifford v. Heckler*, 741 F.2d 263, 266 (9th Cir. 1984)). A court may consider a history of noncompliance and a failure to comply despite the pendency of a contempt motion in determining an appropriate sanction. *See id.* at 856–57. "[C]oercive civil contempt sanctions can include incarceration until compliance is attained." *Craters & Freighters v. Daisychain Enters.*, No. C 09-4531 CW, 2015 WL 12941881, at *6 (N.D. Cal. Apr. 23, 2015) (citing *Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1110 (9th Cir. 2005)); *accord Perez v. i2a Techs., Inc.*, No. C 15-04963 WHA, 2016 WL 6782770, at *3 (N.D. Cal. Feb. 18, 2016) (court ordered defendant who failed to comply with court orders and "squandered numerous opportunities" to do so to be incarcerated for civil contempt).

The bottom line is that failure to comply with any of the court's orders will not be tolerated and may result in further sanctions.

## CONCLUSION

The court sanctions Mr. Shenkman and allows Forreststream to take discovery into the Records subject to the protocol set forth above.

Nothing in this order relieves Mr. Shenkman of any obligation to preserve and produce information relevant to Forreststream's judgment-enforcement efforts against him, including, without limitation, the obligations imposed by the court's June 14 Order (including the obligation to produce documents and information responsive to Forreststream's discovery requests that may be within his possession, custody, or control beyond the Records at issue here).

**IT IS SO ORDERED.**

Dated: December 11, 2018

_____
LAUREL BEELER
United States Magistrate Judge